UNITED STATES DISTRICT COURT

IN THE DISTRICT OF NEW MEXICO


LJ DOLIN,

Plaintiff,

v.                                    No: 2:16-cv-00529-MCA-GBW

THYSSENKRUPP ELEVATOR

CORPORATION,

Defendant.


### Memorandum Opinion and Order

**THIS MATTER** is before the Court upon Defendant ThyssenKrupp Elevator Corporation's (TKE's) *Motion to Dismiss or, in the Alternative, for Summary Judgment* (*Motion*), filed on June 5, 2016.  [Doc. 7]  Plaintiff L.J. Dolin (Dolin) responded on August 19, 2016.  [Doc. 13]  TKE replied on September 2, 2016.  [Doc. 15]  The Court has considered the parties' submissions and the relevant law, and is otherwise fully informed.  For the following reasons, the Court **GRANTS** TKE's *Motion* as to Dolin's hostile-work-environment claim.   The Court **DENIES** TKE's *Motion* in all other respects.

#### I.    Background

TKE manufactures, installs, and services elevators throughout the United States. [Doc. 7-1, pg. 3 (asserting this fact); Doc. 13 (not disputing this fact)]  Its mechanics who

maintain those elevators are represented by the International Union of Elevator Constructors (IUEC). [*Id*.] The IUEC and TKE entered into a Collective Bargaining Agreement (CBA) which governs wages and employment of those mechanics. [*Id*.] In addition, "Local Representative (LR)" agreements govern mechanics who work in remote locations and provide for additional terms and conditions of employment. [*Id*.] Dolin worked in such a remote location and was subject to an LR agreement. [Doc. 7-1, pg. 3 (referencing the LR agreement applicable to Dolin); Doc. 13, pg. 3 (not disputing this fact)]

> The LR agreement governing Dolin in 2008 included a wage provision stating that
>
> [t]he Employee will be paid based upon the Local No. 131 wage rate in accordance with the prevailing wages, fringes, and Local Expense Agreement negotiated between the Company and the Local., [sic] During the first six (6) months of this assignment, she will be paid six-percent (6%) above the mechanic rate and shall thereafter be paid twelve and one-half (12.5%) above scale as long as she is assigned to the Roswell, NM Local Office.

[Doc. 7-3; *see also* Doc. 13, Ex. A, pg. 5 (2009 local office assignment with the same provision)] Dolin was paid consistently with this provision until March, 2010, when she was terminated. [Doc. 7-1, pg. 4 (stating this fact); Doc. 13, pg. 3 (not disputing this fact)]

In April, 2010, Dolin filed a complaint with the New Mexico Department of Workforce Solutions/Equal Employment Opportunity Commission (EEOC) alleging wrongful termination on the basis of sex and sexual orientation. [Doc. 7-1, pg. 4 (stating this fact); Doc. 13, pg. 3 (not disputing this fact)] The parties settled the dispute in August, 2010. As part of the settlement, Dolin agreed to withdraw her complaint and the

New Mexico Department of Workforce Solutions closed its file related to Dolin's charge. [Doc. 7-1, pg. 4 (stating that the file was closed); Doc. 13, pg. 3 (stating that Dolin requested that the file be closed)]  In addition, TKE agreed to pay Dolin a lump sum of $29,266 and to reinstate her to "her former position" at the "prevailing negotiated Mechanic's wage rate of IUEC Local 131."  [Doc. 7-1, pg. 4 (stating these facts); Doc. 13, pg. 3 (not disputing these facts); Doc. 7-5 (the Settlement Agreement)]

The present dispute arises out of TKE's failure to pay Dolin the 12.5% supplement over the base wage rate for Service Mechanics.  From August, 2010 to February, 2016, when Dolin was transferred to another TKE location, she was paid the base mechanic's wage without the 12.5% supplement.  [Doc. 1, ¶ 44 (stating that TKE discriminated against her "whenever [it] issued [Dolin] pay checks that withheld the 12.5% LR Service Mechanic rate."); Doc. 7-1, pg. 4 n. 4; Doc. 13, pg. 3 (referencing the "plus rate")]  Dolin contends that she never agreed in the Settlement Agreement to a wage rate that did not include the 12.5% supplement.  [Doc. 13, pg. 3, ¶ 4]

Dolin filed a second EEOC complaint in January 2014, alleging discrimination based on sex and sexual orientation, as well as retaliation.  [Doc. 7-8]  The form alleged that the discrimination was a "continuing action" that took place from August 11, 2010 to January 17, 2014.  [Doc. 7-8]  The EEOC issued a "Notice of Right to Sue" to Dolin in March 2016.  [Doc. 1, ¶ 7]

In June 2016, Dolin filed a *Complaint* in this Court alleging that TKE discriminated against her based on her sex by paying her less than it paid similarly situated male workers performing similar work.  [Doc. 1]  Dolin also alleges that TKE

retaliated against her for filing the 2010 claim of discrimination with the EEOC.  [Doc. 1, ¶¶ 51, 53-54; Doc. 13, pg. 4, ¶ 9]

TKE now moves for dismissal of Dolin's claims.  TKE argues that some of Dolin's claims should be dismissed for lack of jurisdiction under Rule 12(b)(1) and that other claims should be dismissed for failure to state a claim under Rule 12(b)(6).  TKE also argues, in the alternative, that it should be granted summary judgment on Dolin's pay discrimination claims under Rule 56.  [Doc. 7]

## II.   Discussion

TKE makes three arguments.  First, that Dolin's hostile-work-environment and retaliation claims must be dismissed because Dolin failed to exhaust administrative remedies.  TKE argues that such failure deprives this Court of jurisdiction over these claims under Rule 12(b)(1).  Second, that Dolin has inadequately pled sex discrimination and retaliation claims under Rule 12(b)(6).  Third, that it is entitled to summary judgment because there is no dispute that Dolin agreed to forego the 12.5% supplement in the 2010 Settlement Agreement.  These arguments are addressed in turn.

Motion to Dismiss Under Rule 12(b)(1)

TKE argues that this Court does not have subject matter jurisdiction over Dolin's harassment/hostile-work-environment and retaliation claims because Dolin failed to exhaust administrative remedies regarding those claims.  [Doc. 7-1, pg. 7-8]

Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon

which subject matter jurisdiction is based." *Ruiz v. McDonnell,* 299 F.3d 1173, 1180 (10th Cir. 2002). Here, TKE's challenge rests on the facts behind Dolin's 2014 EEOC complaint. Therefore, TKE mounts a factual attack on this Court's jurisdiction. "In reviewing a factual attack, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts," and a court's reference to such materials does not necessarily convert such a factual attack into a Rule 56 motion. *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (internal quotation marks and citation omitted). Unless it is shown that no re-drafting of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject-matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice. *Hollander v. Sandoz Pharm. Corp*., 289 F.3d 1193, 1216 (10th Cir. 2002) (holding that a dismissal based on jurisdiction did not address the merits and should be without prejudice); *see* Fed. R. Civ. P. 41(b).

*Harassment/Hostile Work Environment*

TKE maintains that Dolin's harassment/hostile-work-environment claims were not included in her 2014 EEOC charge and that this Court lacks "jurisdiction over claims that are not part of a timely EEOC charge." [Doc. 7-1, pg. 8] The Court notes that there is no explicit claim of "harassment" or "hostile work environment" in Dolin's *Complaint*. However, she does reference harassment and hostile work environment in two of her assertions. [Doc. 1, ¶¶ 50, 59] To the extent that Dolin makes harassment or hostile-work-environment claims, such claims must be dismissed because they were not exhausted through the EEOC administrative process.

Although there are cases stating that failure to exhaust administrative remedies raises jurisdictional questions, recent cases have held that some aspects of exhaustion are merely preconditions to suit, not jurisdictional. In *Shikles v. Sprint/United Management Co.*, our Tenth Circuit stated that "a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII—not merely a condition precedent to suit." 426 F.3d 1304, 1317 (10th Cir. 2005). In *Gad v. Kansas State University*, however, the Tenth Circuit held that Title VII's requirement that an EEOC charge be verified, although a requirement for filing for an administrative remedy, is not jurisdictional. 787 F.3d 1032, 1038 (10th Cir. 2015). Instead, the verification requirement is an important component of an EEOC claim that may be raised (or waived) as a defense. *Id*. at 1040 (stating that "[h]olding verification non-jurisdictional does not imply any diminution in the need for plaintiffs to comply with this Title VII requirement" and that "an employer that identifies and raises a verification defect may still achieve the dismissal of a plaintiff's suit," and calling the verification requirement "a waivable claim processing provision that does not invoke our subject matter jurisdiction" (alterations, internal quotation marks and citation omitted)). Although the *Gad* Court did not expressly overrule *Shikles*, it stated that *Shikles* depended on earlier cases that preceded United States Supreme Court cases addressing Title VII jurisdictional issues and that "the subsequent development of the law underscores the limited force our earlier cases retain today." *Gad*, 787 F.3d at 1040. In *Zipes*, the United States Supreme Court stated that compliance with the filing deadlines in Title VII was not jurisdictional, indicating that not every aspect of the administrative requirements is jurisdictional. *Zipes v. Trans World*

*Airlines, Inc.*, 455 U.S. 385, 393 (1982). *See Arabalo v. City of Denver*, 625 F. App'x 851, 859-60 (10th Cir. 2015) (discussing the impact of *Gad* and stating that *Gad* "called into question some of our circuit's earlier decisions concluding we lacked subject-matter jurisdiction for other failures to meet Title VII's requirements.").

These limitations on the jurisdictional effect of certain aspects of the administrative process aside, it appears that the basic rule that the scope of "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC" remains good law. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (internal quotation marks and citation omitted). In *Arabalo*, the Tenth Circuit held that, even if the *Gad* holding abrogated the jurisdictional nature of some exhaustion requirements, "[a]s a condition precedent to suit, even if not a jurisdictional prerequisite, [a plaintiff is] required to notify the . . . EEOC of the alleged [facts underlying a hostile-work-environment claim] before she could later rely on [those facts] in support of her hostile-work-environment claim." *Arabalo*, 625 F. App'x at 860.

Whether framed as a jurisdictional matter or a condition precedent to suit, this principle promotes the general purposes of exhaustion, one of which is to "protect employers by giving them notice of the discrimination claims being brought against them and provid[e] the EEOC with an opportunity to conciliate the claims." *Gad*, 787 F.3d at 1040 (alterations, internal quotation marks, and citations omitted). In either case, it is Dolin's burden to demonstrate that she met Title VII's exhaustion requirements. *Id*. at 1041 (stating that a condition precedent to suit is "a burden for plaintiffs to carry");

*Arabalo*, 625 F. App'x at 860 (holding that the plaintiff's "need to disclose her bases supporting her alleged claim [to EEOC] is a condition precedent to her suit, not a mere affirmative defense for which the defendant must bear the burden").

In reviewing whether Dolin exhausted her hostile-work-environment claim, a court "liberally construe[s] charges filed with the EEOC in determining whether administrative remedies have been exhausted as to [that] claim." *Jones*, 502 F.3d at 1186. Neither party included the EEOC's "Notice of Right to Sue" in their pleadings. However, TKE did attach a copy of Dolin's 2014 EEOC charge.[1] [Doc. 7-8]

"To prevail on her hostile[-]work[-]environment claim under Title VII, [Dolin] must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult[] that is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Bird v. West Valley City*, 832 F.3d 1188, 1205 (10th Cir. 2016) (alteration, internal quotation marks, and citation omitted). In a similar case, the Tenth Circuit affirmed the district court's ruling that a hostile-work-environment claim was not addressed in an EEOC charge. There, the complainant had "checked the boxes marked 'race' and

---

1 Dolin asserts that TKE improperly attached "extrinsic evidence" to its *Motion* and that the Court should strike such evidence. [Doc. 13, pg. 5 n.1] However, the Court may properly consider the 2014 EEOC charge because it was referred to in Dolin's *Complaint* and in her *Response* to TKE's *Motion*. [*See* Doc. 1, pg. 2, ¶ 6; Doc. 13, pg. 9-10] Moreover, "[i]n reviewing a factual attack [on the Court's jurisdiction], a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts," and a court's reference to such materials does not necessarily convert such a factual attack into a Rule 56 motion. *Stuart*, 271 F.3d at 1225 (internal quotation marks and citation omitted). Although Dolin states in a footnote that the materials attached by TKE are "not authenticated," this is not sufficient to attack the document attached by TKE as the 2014 EEOC charge.

'retaliation,'" as well as the "box marked 'continuing action.'"  *Mitchell v. City & Cty. of Denver*, 112 F. App'x 662, 667–68 (10th Cir. 2004).  The complainant also "filled in the blanks marked 'earliest date' of discrimination and the 'latest date' of discrimination with the same date, September 4, 1996."  *Id*.  In the description of the charge, the complainant wrote, "[the defendant] failed to promote me because of my race/African American and in retaliation for engaging in protected activity."  *Id*. (alterations, internal quotation marks, and citation omitted).  The complainant also wrote that

> (1) he had always been a 'satisfactory to above-satisfactory' employee, (2) three Caucasian males with less seniority and experience had been promoted in the last six months, (3) throughout this period he had consistently complained to his superiors regarding what he perceived to be discriminatory treatment, (4) he had filed a previous charge of discrimination around 1986, (5) [one of the defendant's employees] allegedly stated, "this nigger [complainant] ain't going anywhere as long as he works for me," and (6) he remained employed "at a lesser step than he should be."

> *Id*.

The Tenth Circuit concluded that this charge "could not reasonably be expected to lead to a hostile[-]work[-]environment/racial[-]harassment claim" and that "[n]othing in [the complainant]'s EEOC complaint indicates a hostile work environment."  *Id*.  It also noted that "[the complainant's] EEOC charge contains no factual allegations of treatment in manner or degree sufficient to allege a hostile work environment."  *Id*. at 668.

Here, Dolin's EEOC charge does not allege a hostile work environment.  On the EEOC form, in a box labeled "DISCRIMINATION BASED ON (Check appropriate box(es)):" Dolin checked "sex," "retaliation," and "other."  [Doc. 7-8]  Beside "other," she entered "Equal Pay."  [Doc. 7-8]  In a box labeled "DATE(S) DISCRIMINATION

TOOK PLACE," Dolin entered "8/11/2010 – 01/17/2014" and checked a box labeled "CONTINUING ACTION." [Doc. 7-8]

In the description of her claim, she wrote

I began working for [TKE] in Roswell, New Mexico on December 15, 2008 as an LR Service Mechanic. On March 5, 2010, I was wrongfully terminated. Shortly thereafter, I filed an EEOC complaint, 453-2010-00819, concerning gender. On or around August 31, 2010, I agreed to withdraw my complaint with the understanding that I would be reinstated to my former position and would be paid 12.5% above union scale mechanics wages. Since that date, my pay has been lowered and [TKE] insists no such agreement exists.

In addition, female employees are paid much less than male employees who are similarly situated. If a female seeks equal pay, than [sic] she is subjected to her request being turned over to an attorney with the company.

I also believe that my wage issue is due to the fact that I lead an alternative lifestyle, as I am a lesbian.

I believe I am being retaliated against for filing an EEOC complaint in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe I and other females are being discriminated against with regard to wages because of our sex (female), [sic] In violation of Title VII of the Civil Rights Act of 1965, as amended, as well as the Equal Pay Act of 1963. In addition, I believe I am being discriminated against with regard to wages due to my sex (male/gender stereotype), in violation of Title VII of the Civil Rights Act of 1964.

[Doc. 7-8]

Moreover, in the *Complaint*, Dolin states that she "filed charges with the New Mexico Department of Workforce Solutions alleging [TKE] committed sex discrimination, violations of the Equal Pay Act, and unlawful retaliation." [Doc. 1, ¶ 6] Thus, Dolin's own description of her 2014 EEOC charge does not reference harassment or hostile work environment.

In addition, the factual allegations in the *Complaint* related to hostile work environment are not reflected in the EEOC charge.  The only reference to "hostile work environment" in the *Complaint* includes a statement that Dolin "became aware" that some of her male colleagues "believed [that Dolin's] persistent complaints about the LR rate pay inequity caused co-workers to lose pay."  [Doc. 1, ¶ 50]  This paragraph also alleges that "some, not all, male LR Service Mechanics" did not receive annual increases as provided for by the CBA.  [Doc. 1, ¶ 50]  None of these allegations were included in the EEOC charge.

As in *Mitchell*, even construing Dolin's EEOC charge liberally, the allegations in the charge failed to alert the EEOC to a hostile-work-environment claim.  Hence, Dolin has failed to carry her burden to demonstrate compliance with Title VII's requirements.  Consequently, the hostile-work-environment claim must be dismissed.

*Retaliation*

TKE makes a different exhaustion argument related to Dolin's retaliation claims.  TKE argues that, to the extent that Dolin argues that TKE retaliated against her for her 2010 EEOC claim by withholding the 12.5% supplement, the retaliation claim must be dismissed because the decision to pay her the base wage rate only was made over 300 days before the 2014 EEOC charge was filed.  [Doc. 7-1, pg. 9; Doc. 15, pg. 6]

The Court understands Dolin's claims to be that 1) TKE paid her less than it paid male workers in similar positions based on her sex, and 2) TKE paid her less than workers in similar positions in retaliation for her 2010 EEOC charge.  Dolin's retaliation claim is, therefore, an alternative theory for why she was paid less than other workers.

Because Dolin's retaliation claim is grounded in the way TKE paid Dolin, it is differentiated from retaliation claims grounded in a discrete, nonrecurring, act such as termination or failure to promote.

Some background on the law related to timing requirements for Title VII claims is necessary to place the parties' arguments in context. The Lilly Ledbetter Fair Pay Act of 2009 (the Act) "governs how long parties have to file 'discrimination in compensation' claims." *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1175 (10th Cir. 2011). The Act was passed in response to the United States Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), *overturned due to legislative action* (Jan. 29, 2009). In that case, the Supreme Court held that Ledbetter's claims were time-barred because she failed to bring them within 180 days of the decision leading to her discriminatory pay. *Id*. at 643. It rejected Ledbetter's argument that "each paycheck that offers a woman less pay than a similarly situated man because of her sex is a separate violation of Title VII with its own limitations period, regardless of whether the paycheck simply implements a prior discriminatory decision made outside the limitations period." *Ledbetter*, 550 U.S. at 625.

In contrast to the holding in *Ledbetter*, the Act provides that

For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A). Thus, the Act permits "discrimination in compensation" claims to accrue based on one of three circumstances: when "a discriminatory compensation decision or other practice is adopted;" when the plaintiff is subject to that decision, or when the plaintiff is paid pursuant to that decision. *See Groesch v. City of Springfield, Ill.*, 635 F.3d 1020, 1024 (7th Cir. 2011) ("[T]he statute of limitations for filing an EEOC charge alleging pay discrimination resets with each paycheck affected by a discriminatory decision.").

TKE points to *National Railroad Passenger Corp. v. Morgan* for the proposition that "each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" and that a plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." [Doc. 7-1, pg. 9] 536 U.S. 101, 114 (2002). But *Morgan* was addressing allegations of retaliation that did not implicate unequal pay. Instead, the *Morgan* plaintiff alleged that "he was consistently harassed and disciplined more harshly than other employees on account of his race." *Morgan*, 536 U.S. at 105 (internal quotation marks and citation omitted). Moreover, *Morgan* predated passage of the Act.

More recent cases addressing allegations of reductions in compensation have held that such claims are not time-barred if a reduced paycheck is received by the plaintiff within the 300-day period, even when the discriminatory decision leading to that paycheck was made outside of the charging period. For example, in *Nelson v. Special Administrative Board of St. Louis Public Schools,* 873 F. Supp. 2d 1104, 1116–17 (E.D. Mo. 2012), the Court held that, even though "the initial retaliatory act, the decision to

compensate [the p]laintiff at a lower salary, may have occurred more than 300 days prior to the filing of either charge of discrimination, under the [Act] each subsequent instance of discriminatory compensation is actionable, and [the p]laintiff may recover back pay for up to two years preceding the filing of the charge of discriminatory retaliation." *See also Groesch*, 635 F.3d at 1025 (holding that white appellants' claims not barred where they were denied credit for years of service but African-American workers were granted such credit because the appellants' claims "allege[d] 'discriminatory compensation decisions' and [we]re based on the payment of wages resulting from those decisions"); *Vuong v. N.Y. Life Ins. Co.*, No. 03CIV.1075(TPG), 2009 WL 306391, at *9 (S.D.N.Y. Feb. 6, 2009), *aff'd sub nom. Pheng Vuong v. N.Y. Life Ins. Co.*, 360 F. App'x 218 (2d Cir. 2010) (holding that the plaintiff's claim "[wa]s expressly declared to be timely by virtue of the [Act]" where the plaintiff claimed that his compensation was less than it would have been absent a discriminatory decision made outside the required period). *Cf. Hutchinson v. City of Oklahoma City*, 919 F. Supp. 2d 1163, 1170 n. 4 (W.D. Okla. 2013) (rejecting the argument that the Act applies to save retaliation claims for conduct falling outside the charging period where the plaintiff did not allege that the retaliation related to discriminatory compensation or that she "was paid less than her male co-workers for performing substantially the same work"); *Zambrano-Lamhaouhi v. N.Y. City Bd. of Educ.*, 866 F. Supp. 2d 147, 167–68 (E.D.N.Y. 2011) (stating that "[c]ase law in the Second Circuit and elsewhere makes clear that the . . . Act . . . applies only to discriminatory employment decisions specifically related to pay, and not to other employment decisions, even where such decisions directly affect pay" and that the Act

did not apply where the plaintiff had alleged only that she suffered a reduction in pay, not that she was paid less than others similarly situated).

Given Dolin's allegation that TKE retaliated against her by making a compensation decision that resulted in recurring paychecks that were less than those for similarly situated male workers, her claim falls within the ambit of the Act and is not time-barred.

<u>Motion to Dismiss Under Rule 12(b)(6)</u>

TKE also argues that Dolin has failed to state a claim for pay discrimination under the Equal Pay Act, the New Mexico Fair Pay for Women Act, or Title VII.  [Doc 7-1, pg. 10]

In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Supreme Court held that, "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.' " *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 570).  In applying this test, a court accepts as true all well-pleaded facts alleged in the plaintiff's complaint but does not accept the plaintiff's legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, in ruling on a Rule 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."  *Collins*, 656 F.3d at 1214.

TKE argues that Dolin has failed to state pay discrimination claims because she failed to 1) make factual allegations about the duties, skills, and working conditions of

the male workers alleged to receive more pay than Dolin, [Doc. 7-1, pg. 11] and 2) the male workers to whom she compares her salary did not work in Roswell, NM and thus did not work in the same "establishment" as Dolin.  [Doc. 7-1, pg. 12-13; Doc. 15, pg. 2]

> To establish a *prima facie* case under the EPA, [Dolin] has the burden of proving that (1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances.

*Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997) (internal quotation marks and citation omitted).  The NM Fair Pay for Women Act is nearly identical to the EPA.  *Compare* 29 U.S.C. § 206(d) *with* NMSA 1978, § 28-23-2(A) (2013).  Similarly, under Title VII, "the plaintiff . . . bears the burden of proving that the employer intentionally paid her less than a similarly-situated male employee." *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1310 (10th Cir. 2006); *see* 42 U.S.C. § 2000e-2.

Dolin has adequately pled her claims.  In the *Complaint*, Dolin states that the 12.5% supplement was paid when the Service Mechanic was required to work under certain conditions, to wit, the Service Mechanic "was required to be 'on call' on a 24/7 basis, was required to respond to client service calls within two (2) hours, and when the Mechanic's assigned route included servicing clients located outside the geographic area identified in the collective bargaining agreement as the 'primary zone.'"  [Doc. 1, pg. 3, ¶ 16]  Dolin states that, when she was hired, she accepted assignment to the "same client service route" as had been assigned to her male predecessor, who was paid the 12.5% supplement.  [Doc. 1, pg. 4, ¶ 17]  She states that in March 2010, when Dolin was

terminated, TKE "continued to pay other LR Service Mechanics who were male and whose job assignments met the conditions for the LR rate."  [Doc. 1, pg. 4, ¶ 21]  She alleges that when she was reinstated, she was "assigned [a] client route outside the primary zone, required . . . to be in on call status 24/7 for all clients in her route, and required . . . to respond to calls within two (2) hours."  [Doc. 1, pg. 4-5, ¶ 23]  She further alleges that in spite of being assigned work subject to the conditions meriting the 12.5% supplement, she was not paid the supplement.  [Doc. 1, pg. 5, ¶¶ 25, 28]  The references to the "conditions" for the 12.5% supplement are sufficient to support Dolin's assertions that 1) the 12.5% supplement is paid on performance under certain conditions, 2) she worked under those conditions, 3) she was not paid the supplement, but 4) male workers working under those conditions were paid the supplement.

While these allegations in the *Complaint* do not reference skills and specific duties, the lack of such reference does not constitute a failure to state a claim.  Dolin's suit does not rest on TKE's failure to pay her as a Service Mechanic.  Instead, it depends entirely on a failure to pay the 12.5% supplement.  Since the supplement is dependent on working conditions, not skills or duties, Dolin's factual allegations are sufficient.

Moreover, the Court is unpersuaded by TKE's argument that Dolin failed to allege facts related to male workers within the same "establishment" because Dolin did not identify comparators who worked in Roswell, as she did.  [Doc. 15, pg. 2]  Dolin does not dispute TKE's assertion that while she was assigned to Roswell, NM, she was the only Service Mechanic so assigned.  [Doc. 7-1, pg. 4, ¶ 2 (stating this fact); Doc. 13, pg. 3 (not

disputing this fact)]  Consequently, there were no Service Mechanics working in Roswell at the same time as Dolin to whom Dolin could point as comparators.

Nevertheless, TKE's argument fails on two fronts.  First, Dolin identifies a Roswell employee who both preceded her and succeeded her as a comparator and asserts that he was paid the 12.5% supplement throughout his assignment to Roswell.  [Doc. 1, pg. 4, ¶¶ 17, 20]  *See* 29 C.F.R. § 1620.13(b)(4) (1998) (referencing a successor as a comparator).

Second, under the circumstances here, the "establishment" inquiry must be broader than TKE suggests.  Both the EPA and the NM Fair Pay for Women Act reference "the establishment" in prohibiting discrimination based on sex.

> No employer shall discriminate, *within any establishment* in which such employees are employed, between employees on the basis of sex by paying wages to employees *in the establishment* at a rate less than the rate that the employer pays wages to employees of the opposite sex *in the establishment* for equal work on jobs the performance of which requires equal skill, effort and responsibility and that are performed under similar working conditions

> § 28-23-3 (emphasis added).  *See* 29 U.S.C. § 206(d).

TKE's argument rests on a narrow construction of the term "establishment."  The Secretary of Labor defines "establishment" as a physical location, stating that "establishment" "refers to a distinct physical place of business rather than to an entire business or 'enterprise' which may include several separate places of business.  Accordingly, each physically separate place of business is ordinarily considered a separate establishment."  29 C.F.R. § 1620.9(a).  However, the Secretary also recognized that in "unusual circumstances," "two or more distinct physical portions of a business

enterprise [may warrant] being treated as a single establishment." 29 C.F.R. § 1620.9(b). Such circumstances might exist where "a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions." 29 C.F.R. § 1620.9(b). Consistent with this rubric, some courts have found a single establishment based on "central control and administration of disparate job sites . . . [including] centralized control of job descriptions, salary administration, and job assignments or functions." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 591 n. 11 (11th Cir. 1994) (collecting cases). Other courts have declined to read "establishment" broadly. *See*, *e.g.*, *Renstrom v. Nash Finch Co.*, 787 F. Supp. 2d 961, 967 (D. Minn. 2011).

Here, Dolin alleges, and TKE agrees, that "the terms and conditions of [her] employment, including wages and benefits, are covered . . . by a collective bargaining agreement." [Doc. 1, pg. 3, ¶ 5; Doc. 7-1, pg. 3, ¶ 1] Further terms of employment, including wages, are included in "local representative agreements" for mechanics who work in remote locations. [Doc. 7-1, pg. 3, ¶ 1 (stating this fact); Doc. 13 (not disputing this fact)] These agreements indicate centralized control of job descriptions, salaries, and assignments. In addition, it is the very nature of Dolin's assignment by TKE that renders her unable to identify any Roswell comparators. Indeed, it appears that, under TKE's reasoning, none of their employees working under "local representative agreements" would ever be able to identify comparators in the same town.

Given that TKE hires Service Mechanics to work independently out of remote locations, Dolin appropriately identified other Service Mechanics as comparators (in addition to the one Roswell employee) for her wage discrimination claims, even if those mechanics work in other locations.

Motion for Summary Judgment

In its final argument, TKE argues that it "paid Dolin based on a legitimate, non-discriminatory reason, which was based on a factor other than sex—settlement of a grievance and EEOC charge." [Doc. 7-1, pg. 14] *See* 29 U.S.C. § 206(d) (permitting "a [wage] differential based on any other factor other than sex"). The Court interprets this argument to be a request for summary judgment on the ground that Dolin's pay was purely a function of the Settlement Agreement. [*See* Doc. 7-1, pg. 1 (requesting summary judgment in the alternative)]

Summary judgment under Fed. R. Civ. P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed. R. Civ. P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate

showing on an essential element of its case, as to which it has the burden of proof at trial. *See Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). It is not the Court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. *See Hunt v. Cromartie*, 526 U.S. 541, 551-52 (1999).

TKE's argument rests on its interpretation of the language in the Settlement Agreement. For instance, TKE maintains that it paid Dolin "the prevailing negotiated mechanic's wage rate of IUEC Local 131, as provided for in the [S]ettlement [A]greement." [Doc. 7-1, pg. 4, ¶ 6] TKE apparently understands the "prevailing negotiated mechanic's wage rate of IUEC Local 131" to mean the base wage rate only. In contrast, Dolin understands the "prevailing negotiated mechanic's wage rate of IUEC Local 131" to mean the base wage rate plus 12.5% as negotiated in the Local Representative Agreement. [Compare Doc. 7-1, pg. 4 with Doc. 13, pg. 3, ¶¶ 4, 6]

In her *Response*, Dolin disputes that she agreed to forego the 12.5% supplement in settlement negotiations. [Doc. 13, pg. 3, ¶ 4] However, in her own affidavit, which

Dolin attached to her response to TKE's motion to dismiss, Dolin states that "[i]n order to get my job back, I was left no choice by TKE except . . . to accept only the elevator mechanic base wage rate under the CBA."  [Doc. 13, Exh. A]  She also states that she

> was advised by [her] union representative . . . that if [she] accepted this settlement, *including the agreement between the IUEC and TKE that my pay would only be the base mechanic rate* upon my re-hire and assignment to the same customer route, that once I resumed performing the work . . . the union would negotiate the 12.5% LR rate again as soon as feasible . . . . On this basis and to get my job back, I agreed to accept the settlement.

> [Doc. 13, Exh. A (emphasis added)]

Hence, Dolin's own affidavit contradicts her assertion that she did not agree to forego the supplement in the Settlement Agreement.

However, even if there were no question of fact as to the terms of the Settlement Agreement, TKE is not entitled to judgment as a matter of law.  Although Dolin has the burden of proof at trial to demonstrate that TKE discriminated against her, the fact that she may have agreed to forego the 12.5% supplement is not dispositive on this issue because "the mere existence of a wage agreement cannot be considered a 'factor other than sex' if the contract perpetuates pay differentials which would themselves violate the [Equal Pay] Act."  *Anderson v. Univ. of N. Iowa*, 779 F.2d 441, 444 (8th Cir. 1985); *see Dean v. United Food Stores, Inc.*, 767 F. Supp. 236, 240 n. 1 (D.N.M. 1991) (stating that "[a] person is not precluded from bringing a claim under the Equal Pay Act because he or she has agreed by contract to a certain level of pay.").  When a wage differential is justified by "a factor other than sex," the defendant must demonstrate that the factor (here, the Settlement Agreement) is "'rooted in legitimate business-related differences in

work responsibilities and qualifications for the particular positions at issue.'" *Riser v. QEP Energy*, 776 F.3d 1191, 1198 (10th Cir. 2015) (discussing whether a gender-neutral pay classification system could serve as a "factor other than sex" (quoting *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 525 (2d Cir. 1992)).  In other words, the fact that a plaintiff agreed to a lesser wage than her counterparts is only a defense to a sex discrimination charge if the defendant can demonstrate that the wage differential is based on legitimate business purposes.

As TKE makes no argument related to the business purposes underlying the wage differential in the Settlement Agreement, TKE is not entitled to judgment as a matter of law and TKE's *Motion for Summary Judgment* must be denied.

## III.    Conclusion

For the reasons stated herein, TKE's *Motion to Dismiss or, in the Alternative, for Summary Judgment*, [Doc. 7] is **GRANTED** as to Dolin's hostile-work-environment claim, and **DENIED** in all other respects.

**SO ORDERED this 31st day of March, 2017.**

_____
M. CHRISTINA ARMIJO
CHIEF UNITED STATES DISTRICT JUDGE