# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LJ DOLIN,

      Plaintiff,

v.                                        Civ. No. 16-529 GBW/GJF

THYSSENKRUPP ELEVATOR CORP.,

      Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

This matter comes before the Court on Plaintiff's Motion for Reconsideration. *Doc. 76*. The Court, having reviewed the Motion and attendant briefing (*docs. 78, 79*), hereby DENIES the Motion for the reasons that follow.

## I.     BACKGROUND

This case stems from allegations brought by Plaintiff regarding her employment with Defendant as a female elevator mechanic from August 11, 2010 until February 4, 2016. *Doc. 1*.[1] Plaintiff filed suit in this Court on June 6, 2016, bringing: (1) equal pay claims under the Equal Pay Act ("EPA"), the New Mexico Fair Pay for Women Act ("FPWA"), and Title VII of the Civil Rights Act, (2) a retaliation claim under Title VII, and (3) a hostile work environment claim under Title VII.[2] On March 30, 2018, Defendant filed a Motion for Summary Judgment, *doc. 54*, which was fully briefed on

---

[1] The Court incorporates the facts presented in its summary, available at *doc. 72* at 8-13, herein.
[2] Judge Armijo dismissed Plaintiff's hostile work environment claim on March 31, 2017. *Doc. 18*.

May 16, 2018.  *Doc. 57*.  The case was thereafter reassigned to the undersigned with the

consent of the parties on September 30, 2018.  *Doc. 60*.

After reviewing Defendant's Motion for Summary Judgment and attendant

briefing (*docs. 54, 55, 56*), and presiding over oral argument on the matter (*doc. 68*), the

Court granted Defendant's Motion for Summary Judgment in part.  *Doc. 72*.  First, the

Court granted Defendant summary judgment on Plaintiff's claim for wage

discrimination on the basis of sex under the EPA, finding that even though Plaintiff

made a *prima facie* showing of discrimination, Defendant successfully demonstrated that

Plaintiff's pay differential was based on her performance problems, a factor other than

sex.  *Id.* at 14-30.  Second, the Court granted Defendant summary judgment on

Plaintiff's Title VII sex discrimination claim, finding that even though Plaintiff made a

*prima facie* showing of discrimination, Defendant successfully demonstrated that

Plaintiff's pay differential was based on her performance problems, and Plaintiff failed

to reveal that this basis was pretextual.  *Id.* at 30-39.  Third, the Court granted Defendant

summary judgment on Plaintiff's Title VII retaliation claim, finding that Plaintiff failed

to make a *prima facie* case; and even if Plaintiff had successfully made a *prima facie* case,

Defendant would nevertheless prevail because Defendant established that Plaintiff's

pay differential was based on her poor performance, and Plaintiff failed to demonstrate

that this basis was pretextual.  *Id.* at 39-47.   Finally, having dismissed all Plaintiff's

federal claims, the Court declined to exercise supplemental jurisdiction over Plaintiff's FPWA claim and dismissed it without prejudice. *Id.* at 47-53.

Thereafter, on March 5, 2019, Plaintiff filed a Motion for Reconsideration, which seeks relief pursuant to Federal Rules of Civil Procedure 59(e), 60(b)(1), and 60(b)(6). *Doc. 76.*[3] Plaintiff's Motion, which was fully briefed on March 25, 2019, *doc. 79,* is now before the Court.

## II.  LEGAL STANDARDS

Plaintiff brings her Motion to Reconsider pursuant to Fed. R. Civ. P. 59(e), 60(b)(1), and 60(b)(6).  "A district court has considerable discretion in ruling on a motion to reconsider."  *Payne v. Tri-State Careflight*, 322 F.R.D. 647, 666 (D.N.M. 2017) (citing *Phelps v.* Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997)).  Grounds for granting a Rule 59(e) motion include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."  *Monge v. RG Petro-Mach. Grp. Co. LTD*, 701 F.3d 598, 611 (10th Cir. 2012) (internal quotation and citation omitted).  Notably, courts should not grant relief under Rule 59(e) where the movant seeks only to "revisit issues already addressed or

_____

[3] Plaintiff failed to seek Defendant's concurrence before filing her Motion, in violation of Local Rule 7.1. *See* D.N.M.LR-Civ. 7.1(a).  In response, Defendant requests that the Court deny Plaintiff's Motion for Reconsideration.  *Doc. 78* at 4 (citing D.N.M.LR-Civ. 7.1(a)) ("a motion that omits recitation of a good-faith request for concurrence may be summarily denied.").  The Court, in its discretion, refrains from denying Plaintiff's Motion to Reconsider on this basis.

advance arguments that could have been raised in prior briefing." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citation omitted).

Next, the subsections of Rule 60(b) relied upon by Plaintiff permit the court to modify a final judgment due to "mistake, inadvertence, surprise or excusable neglect," Fed. R. Civ. P. 60(b)(1), or "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6). "The Tenth Circuit uses three factors in determining whether a judgment may be set aside in accordance with rule 60(b)(1): (i) whether the moving party's culpable conduct caused the default; (ii) whether the moving party has a meritorious defense; and (iii) whether the nonmoving party will be prejudiced by setting aside the judgment." *Payne*, 322 F.R.D. at 669 (citing *United States v. Timbers Preserve*, 999 F.2d 452, 454 (10th Cir. 1993)); *see also Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (holding that "[c]arelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1)"). Relief pursuant to Rule 60(b)(6) "is even more difficult to attain[,] and is appropriate only when it offends justice to deny such relief." *Saggiani v. Strong*, 718 F. App'x 706, 712 (10th Cir. 2018) (unpublished) (quoting *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1293 (10th Cir. 2005)). *See also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988) (cautioning that Rule 60(b)(6) should only be applied in "extraordinary circumstances.").

### III.    ANALYSIS

In her Motion to Reconsider, Plaintiff contends substantial evidence indicates that Defendant's performance-based rationale for denying Plaintiff a plus rate was pretextual.  *Doc. 76* at 7-15.  Particularly, Plaintiff highlights evidence that she argues reveals Defendant solicited customer complaints, exhibited animus towards Plaintiff, and disparately disciplined, evaluated, scrutinized, and denied training to her.  *Id.* Plaintiff argues the Court erred by failing to conclude that this evidence supports her pretext argument, and requests that it deny Defendant's Motion for Summary Judgment on reconsideration.  *Id.*  Defendant, in response, contends that the Court should deny Plaintiff's Motion and further requests that it amend its ruling by entering summary judgment in Defendant's favor on Plaintiff's New Mexico Fair Pay for Women Act ("FPWA") claim.  *Doc. 78* at 5-13.

The Court, having reviewed all relevant materials, DENIES Plaintiff's Motion for Reconsideration and DENIES Defendant's request.  The Court will begin by addressing why Plaintiff's evidence in support of her Motion for Reconsideration fails to justify relief under either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure.  It will then address Defendant's request.

**A. THE COURT DENIES PLAINTIFF'S MOTION FOR RECONSIDERATION BECAUSE PLAINTIFF PROVIDES NO NEW CONTROLLING AUTHORITY, FAILS TO DEMONSTRATE A NEED TO CORRECT CLEAR ERROR OR PREVENT MANIFEST INJUSTICE, AND PRESENTS NO OTHER MERITORIOUS ASSERTION TO JUSTIFY RELIEF UNDER RULE 59 OR RULE 60.**

**1. Plaintiff provided no evidence suggesting Defendant actively solicited customer complaints.**

To begin, Plaintiff asserts that the Court should deny summary judgment to Defendant, because Defendant aggressively sought out customer complaints about Plaintiff in an effort to manufacture Plaintiff's poor performance record. *Doc. 76* at 7-8. Plaintiff contends such efforts demonstrate that Defendant's stated reason for denying a plus rate to Plaintiff was pretextual. *Id.* The Court, before issuing its Order, considered Plaintiff's argument that Defendant was "ginning up" customer complaints against her. *Doc. 72* at 38-39. However, it concluded that no evidence existed suggesting that TKE had, in fact, solicited customer complaints. *Id.* at 38 ("While the Court in a summary judgment posture does not accept this [evidence] as proof that Defendant did not target Plaintiff, it certainly is not evidence to the contrary."). Nevertheless, Plaintiff redirects the Court to two pieces of evidence that she contends contradict the Court's finding.

First, Plaintiff points to Albuquerque District Manager Gary Dodd's testimony that TKE was "seeking to have written documentation about [an] event" and that a TKE employee "had asked the customer if they would provide written documentation of their dispute." *Doc. 76* at 8 (citing *doc. 54-5* at 79). A review of the deposition transcript reveals that Mr. Dodd requested documentation from a customer after that customer

6

complained to Defendant about Plaintiff. *Doc. 54-5* at 79-80. In other words, Mr. Dodd simply sought to memorialize a customer's preexisting complaints. Asking for a written statement about a previously-communicated complaint is a far cry from soliciting the original complaint. *See Arrington v. Southwestern Bell Telephone Co.*, 93 F. App'x. 593, 599-600 (5th Cir. 2004) ("[Plaintiff's] subjective belief that [Defendant employer] solicited the customer complaints, without more, is [] insufficient to cast doubt on [Defendant's] proffered reason for his termination.").

Second, Plaintiff directs the Court to an email in which TKE's Southwest Vice President of Construction/Modernization Operations, Mark Dye, asks another employee, "Did you get that customer letter from the Comfort Suites where they voiced their displeasure with LJ's customer skills?" *Doc. 76* at 8 (citing *doc. 54-21* at 7). This email proves even less than the Dodd testimony referenced above. It is an email asking only if the email recipient had received a customer complaint letter of which Mr. Dye was already aware. It does not reveal that the letter had been or should be solicited, let alone demonstrate that the original complaint had been solicited. Despite Plaintiff's suggestions to the contrary, there is no indication that Mr. Dye sought to relay a hidden directive within the email to solicit customer complaints or that this email was part of a bigger scheme to manufacture a poor performance record against Plaintiff. The Court will not strain to read a meaning into the email merely based on Plaintiff's subjective belief. *See Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir. 1995) (The plaintiff's

subjective belief that discriminatory intent motivated the defendant's actions was insufficient to establish a material question of fact). In short, the email does nothing to support Plaintiff's theory that Defendant manufactured her poor performance record.

Based on the foregoing, the Court finds that Plaintiff failed to present evidence suggesting Defendant was "ginning up" complaints about her performance. The Court did not err in so finding in its prior order. Consequently, the Court rejects this argument.

### 2. Plaintiff proffered no evidence indicating that Defendant disparately disciplined her.

The Court previously considered Plaintiff's argument that "she was subjected to different discipline…than other employees who committed the same or more serious offenses." *Doc. 72* at 37 (quoting *Chytka v. Wright Tree Service, Inc.*, 925 F. Supp. 2d 1147, 1167 (D. Colo. 2013)). The Court held that Plaintiff had not presented admissible evidence that TKE employed any other employee who suffered from a pattern of performance issues comparable to her own but nevertheless retained a plus rate. *Doc. 72* at 37-38. In her Motion for Reconsideration, Plaintiff asserts several arguments in an effort to demonstrate that Defendant disparately disciplined Plaintiff. *Doc. 76* at 8-9. The Court will address these arguments, in turn.

i. *Plaintiff's affidavit fails to provide admissible evidence that Defendant disparately disciplined Plaintiff compared to Steve Evarts.*

Plaintiff argues that the record reveals that Defendant disproportionately disciplined Plaintiff compared to Steve Evarts, her predecessor and successor. *Id.* at 8-9. In support, Plaintiff points to the following passage in her affidavit and the referenced attachments:

> 6. In February 2009 (roughly 2.5 months after accepting the LR position) I met with TKE Branch Manager, Harold Carr in Hobbs, NM. He invited me to lunch and I asked him what brought him to Hobbs. He replied that he was there to refund $6000.00 to the owner of Watson Truck Supply. . . . The reason for the refund was due to my predecessor [and later, her successor], Steve Evarts, who had failed to service the elevator equipment at Watson Truck Supply for a period of 12 months (1 year). Steve Evarts had left the LR Service Route #5 around August 2008. See attachment B, Letter of Unsatisfactory performance issued by TKE to Steve Evarts February 19, 2008.
>
> 7. Steve Evarts was not terminated for missing these service visits, nor did he lose his 12.5% Plus Rate Pay over the incident…
>
> 8. By comparison, TKE "wrongfully" terminated me for missing one service visit at TKE customer Cannon Air Force Base. See Attachment C, termination letter from TKE dated March 03, 2010.

*Id.* at 8 (quoting *doc. 55-5* at ¶¶6-8) (all ellipses and brackets as in original).

Unfortunately for Plaintiff, the key allegation -- that Mr. Evarts failed to service the elevator equipment at Watson Truck Supply for a period of 12 months – is not supported by evidence admissible when considering a summary judgment motion.

As it did in Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Defendant asserts that this portion of the affidavit is not based on personal knowledge. *See doc. 78* at 7; *see also doc. 56* at 2. Federal Rule of Civil Procedure 56(c)(4) provides that an affidavit offered in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "The burden is on the proponent [of the affidavit] to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment; *see also Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1250-51 (10th Cir. 2013); *Wilson v. Budco*, 762 F. Supp.2d 1047, 1057 (E.D. Mich. 2011).

Plaintiff's affidavit fails to establish her personal knowledge of Mr. Evarts's alleged employment deficiencies. First, it is important to read Plaintiff's affidavit carefully. She begins with describing a lunch with Mr. Carr in February 2009. *Doc. 55-5* at ¶6. She explains that she asked Mr. Carr why he was in town. *Id*. "He replied that he was there to refund $6000.00 to the owner of Watson Truck Supply[.]" *Id*. The next line of the affidavit simply asserts, "The reason for the refund was due to my predecessor [,]Steve Evarts, who had failed to service the elevator equipment at Watson Truck Supply for a period of 12 months (1 year)." *Id*. Notably, Plaintiff does not say that Mr. Carr **told her** about Mr. Evarts' alleged problems, nor does she otherwise

identify the source for this assertion. With her citation to the unsatisfactory performance letter after the following line, it appears that the letter, rather than a statement from Mr. Carr, was the source of her conclusion about the reason for the refund Mr. Carr was delivering. Even assuming that "personal knowledge" could be properly based upon such a letter within the meaning of Rule 56(c)(4), it cannot here because the Court has stricken it from the record. *See doc. 71.*[4] Moreover, it is worth noting that Plaintiff could not have personally perceived or observed that Mr. Evarts missed one year of service visits at Watson Truck Supply. In fact, she was not yet employed by Defendant during the period in which Mr. Evarts allegedly missed these visits. *Doc. 76* at 8-9. Consequently, Plaintiff has presented **no** evidence to meet her burden of establishing her personal knowledge of Mr. Evarts' alleged employment failures.

Second, even assuming that the Court should infer that Mr. Carr told Plaintiff about Mr. Evarts' failures, Plaintiff has not established that the statement is admissible hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the current trial or hearing, 'offer[ed] in evidence to prove the truth of the matter asserted in the statement[.]'" *United States v. Alcorta*, 853 F.3d 1123, 1138 (10th Cir. 2017) (quoting Fed. R. Evid. 801). Plaintiff is indeed seeking to introduce Mr. Carr's

---

[4] Plaintiff recognizes this fact in her motion but, notably, does not seek reconsideration of the striking. *See doc. 76* at 8.

hypothetical statement to prove the truth of the matter asserted – that Mr. Evarts failed

to service a client's elevators for a year.  Such an out-of-court statement is inadmissible

unless an exception applies.  *See Herrick v. Garvey*, 298 F.3d 1184, 1191 (10th Cir. 2002).

"[H]earsay testimony that would be inadmissible at trial may not be included in an

affidavit to defeat summary judgment because a third party's description of a witness'

supposed testimony is not suitable grist for the summary judgment mill."  *Thomas v.*

*Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995) (quotation and alterations omitted). As

the Tenth Circuit has explained:

> [W]hile…the *form* of evidence produced by a nonmoving party at
> summary judgment may not need to be admissible at trial, 'the *content or*
> *substance* of the evidence must be admissible.'  That is, Rule 56 permits
> parties at summary judgment to produce their evidence by means of
> affidavit, a *form* of evidence that is usually inadmissible at trial. . . .  Yet[,]
> Rule 56 does not suggest we enjoy a license to relax the *content* or *substance*
> of the Federal Rules of Evidence when viewing a summary judgment
> affidavit. . . .  To the contrary, Rule 56 expressly prescribes that a summary
> judgment affidavit must 'be made on personal knowledge, [and] set forth
> facts that would be admissible in evidence. . . . '  So…although evidence
> presented in the form of an affidavit at summary judgment can be
> 'converted' in form into live testimony at trial, the content or substance of
> the affidavit must be otherwise admissible, and any hearsay contained in
> a summary judgment affidavit remains hearsay, beyond the bounds of the
> court's consideration.

*Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (quoting *Thomas*, 48

F.3d at 485; Fed. R. Civ. P. 56(e)(1)); *see also Zamora v. Bd. of Educ. for the Las Cruces Pub.*

*Schs.*, 2013 WL 12086304, at *7 (D.N.M. May 22, 2013) (unpublished) ("Sworn testimony

is admissible for summary judgment purposes as long as the testimony is of a type that would be admissible if the swearing witness testified at a trial on the matter."). Plaintiff contends that, even if her assertions are hearsay, such hearsay is admissible under Federal Rules of Evidence ("FRE") 803(3) and 803(21).[5]  *Doc. 79* at 4.  Neither exception applies.[6]

FRE 803(3) provides an exception to the hearsay rule when considering "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan), or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed[.]"  Fed. R. Evid. 803(3).  Plaintiff argues that Mr. Carr's statements reflect his motive, intent or plan, and therefore are admissible under FRE 803(3).  *Doc. 79* at 4. Although it is true that Mr. Carr communicated to Plaintiff that he planned to reimburse Watson Truck Supply, Plaintiff is not offering this statement to show that Mr. Carr intended to reimburse Watson Truck Supply.  Rather, she is offering it to prove that Mr. Carr believed or remembered that Mr. Evarts had missed a year of service visits.  But, as noted above, in order to fall within the FRE 803(3) exception, "[t]he

---

[5] In her briefing, Plaintiff states that Federal Rules of Civil Procedure 803(3) and 803(21) provide the applicable hearsay exception.  *Doc. 79* at 4.  The Court assumes that Plaintiff instead intends to reference those provisions within the Federal Rules of Evidence.

[6] Plaintiff does not argue that the statement could avoid the hearsay bar under FRE 801(d)(2).  As such, she has waived this argument.  Even if this omission were not considered waiver, she has pointed to no evidence that Defendant authorized any such statement by Mr. Carr or that it was within the scope of his employment relationship with Defendant.  *See infra* pp. 19-21.

statements of intent must reveal information or details about the future, which has been contrasted with statements of memory, or looking back to the past." *United States v. Gutierrez*, 2018 WL 2451245, at *16 (D.N.M. May 31, 2018) (unpublished) (citing *Shepard v. United States*, 290 U.S. 96, 104 (1933)). Thus, FRE 803(3) is an inappropriate vehicle to admit a statement that relays information concerning past events or activities, such as Mr. Evarts' missed site visits.

Plaintiff's dependence on Rule 803(21) is similarly misguided. "Hearsay statements are admissible under 803(21) when such statements concern 'reputation among a person's associates or in the community concerning the person's character.'" *Pueblo of Jemez v. United States*, 2018 WL 6002913, at *9 (D.N.M. Nov. 15, 2018) (unpublished) (quoting Fed. R. Evid. 803(21)). Here, Mr. Carr's statement that Mr. Evarts had missed site visits does not concern Mr. Evarts' reputation or character, but rather addresses Mr. Evarts' prior acts. A proponent cannot rely on FRE 803(21) to introduce evidence of prior acts. *See id.* (citing *United States v. Arroyo*, 406 F.3d 881, 887-88 (7th Cir. 2005)) ("[an] informant's statement that defendant was believed to have 'ripped' two kilos of cocaine during a drug sale was not admissible under rule 803(21), because statement was not related to 'reputation of [defendant's] character among associates or in the community,' but to a specific prior act").

In conclusion, for purposes of opposing summary judgment, Plaintiff cannot rely on the assertion that Mr. Evarts failed to service an elevator for a year. Plaintiff's

affidavit, which is the only source in the record for this claim, cannot be credited on this point because it does not demonstrate Plaintiff's personal knowledge of this alleged fact. To the extent that it is based upon a statement made to her, Plaintiff does not establish that the statement is admissible hearsay. As such, there is no evidence that Defendant disparately disciplined Plaintiff compared to Steve Evarts.

       *ii.*      *Plaintiff fails to present other evidence suggesting Defendant disparately disciplined Plaintiff compared to similarly situated male employees.*

Next, Plaintiff argues that an email chain from October 2010 reveals that Defendant disparately disciplined Plaintiff compared to a male employee. *Doc. 76* at 9 (citing *doc. 54-21* at 4); *doc. 79* at 4-5. The chain begins with an email, written on the afternoon of October 6, 2010 by Ms. Ortega, General Manager of the Fairfield Inn & Suites, a TKE customer, to her superior, Mr. Singleton. Ms. Ortega's email states, in relevant part,

> The Roswell lady with Thyssen came and randomly shut down the elevator last week with-out [sic] telling us or talking to the front desk. It was for about an hour for "cleaning" and incidentally set off the Fire Alarm. . . . She and another gentleman just walked in about 10 minutes ago and rented a sleeping room for the night. They just shut down the elevator and told my GSR that they are working on it for 3 hours.

*Doc. 54-21* at 4. An hour later, Mr. Singleton forwarded Ms. Ortega's message to TKE management, adding, "What is wrong with [Plaintiff]? Please give us a little notice for the sake of both our guests and our employees." *Id*. The following morning, Mr. Carr, the El Paso Branch Manager, forwarded the conversation to Mr. Upchurch, the Director

of Labor Relations, explaining, "Thought you might be interested in the attached note from Mr. Warren Singleton.  Let us know if and how you would like for us to address this with LJ."  *Id.*  Plaintiff argues that this exchange indicates disparate discipline of Plaintiff, because even though a customer complained to TKE management about both Plaintiff and "another gentleman," TKE management only sought to discipline Plaintiff. *Doc. 76* at 9.  This argument fails for several reasons.

First, Plaintiff is raising this comparator argument for the first time in her motion for reconsideration.   It is inappropriate to grant relief under Rule 59(e) where the movant seeks only to "advance arguments that could have been raised in prior briefing."  *Does*, 204 F.3d at 1012.

Second, Plaintiff has failed to prove that the "gentleman" is a similarly situated comparator.  "To assert a claim of disparate treatment, the plaintiff must show that he was treated differently than other similarly situated employees who violated work rules of comparable seriousness."  *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 2007) (citation omitted).  "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline.  A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated."  *Id*. (citations and quotations omitted).  Plaintiff has failed to identify the "gentleman" or

provide any other evidence by which the court could conclude that he was a proper comparator under these standards. Therefore, the possible lack of punishment for him cannot establish pretext.

Finally, even assuming away these dispositive problems, Plaintiff's contention would nevertheless fail because, even based on the limited facts before the Court, Plaintiff and the "gentleman" were not similarly situated with respect to the complaint. Plaintiff, not the "gentleman," was the focus of the customer's complaint. Although Ms. Ortega vaguely mentions the involvement of a gentleman in her email, her complaint concentrates on Plaintiff's actions, especially Plaintiff's decision to shut down an elevator without notice. *Doc. 54-21* at 4. Moreover, it is clear from the email that Ms. Ortega was referring to two separate incidents. The first occurred the week before the email was sent – "The Roswell lady with Thyssen came and randomly shut down the elevator last week with-out [sic] telling us or talking to the front desk." *Doc. 54-21* at 4. The second occurred the day the email was sent – "She and another gentleman just walked in about 10 minutes ago and rented a sleeping room for the night. They just shut down the elevator and told my GSR that they are working on it for 3 hours." *Id*. While Plaintiff was involved on both occasions, the "gentleman" was implicated only in the second. In and of itself, this distinction would justify different treatment of Plaintiff and the "gentleman." But here, the distinction is paramount because the complaining client found the unwarned shutdown, which occurred on the first occasion, the most

offensive, as emphasized by the request that TKE "[p]lease give us a little notice for the sake of both our guests and our employees." *Id*. Thus, even without knowing the identity or employment background of the "gentleman," his treatment after the TKE complaint would not qualify as a proper comparator to Plaintiff's treatment for the purpose of proving pretext.

Plaintiff proffers no other evidence in support of her contention that Defendant disparately disciplined her. Based on the foregoing, the Court concludes that it did not err in deciding that Plaintiff failed to present any evidence that Defendant subjected her to comparatively excessive discipline.

### 3. Plaintiff failed to proffer admissible evidence suggesting that Defendant subjected Plaintiff to a disparate evaluation regime.

Plaintiff then argues that she can establish pretext based on the fact that Defendant subjected Plaintiff to a different evaluation scheme than her male comparators. *Doc. 76* at 10. In support of this argument, Plaintiff points to her affidavit, in which she states that, unlike her male peers, she was not allowed to self-evaluate, causing her to receive lower scores on her performance evaluation. *Id.* (citing *doc. 55-5*). In support of the claim that her male peers were allowed to self-evaluate, Plaintiff explains that, over dinner on February 17, 2010, her coworker Monty Gregg told Plaintiff that Mr. Roach had allowed him to self-evaluate. *Id*. She further states that the following day she called three other male co-workers who confirmed to her that they, too, had self-evaluated. *Id*. Unfortunately for Plaintiff, these conversations are

inadmissible hearsay.  Because Plaintiff presents no other evidentiary support for the proposition that her male co-workers self-evaluated, her argument relying on a disparate evaluation scheme fails.

As discussed above, *supra* pp. 11-12, the Court does not consider inadmissible hearsay evidence when addressing a motion for summary judgment.  Because Plaintiff seeks to introduce the out-of-court statements of her co-workers for the truth of those statements, they constitute inadmissible hearsay if no exception is established.  Plaintiff points to only one hearsay exception to overcome this problem: FRE 807.  *Doc. 79* at 6.[7] FRE 807 provides for a residual exception by which hearsay statements are not excluded if: "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; *and* (4) admitting it will serve the purposes of these rules and the interests of justice."  Fed. R. Evid. 807 (emphasis added).

The extent of Plaintiff's argument to fit these statements under the FRE 807 exception is that "they have the required indicia of reliability; there would simply be no reason for them to mislead on the point."  *Doc. 79* at 6.  Perhaps this argument is sufficient to satisfy the first FRE 807 prerequisite.  And perhaps Plaintiff's broader

---

[7] Plaintiff states that Rule 807 of the Federal Rules of Civil Procedure provides the relevant hearsay exception.  *Doc.* 79 at 6.  However, as at *supra* n.5, the Court assumes that Plaintiff, instead, intends to reference Federal Rule of Evidence 807.

argument demonstrates that she offers these statements as evidence of a material fact, thus satisfying the second FRE 807 prerequisite. Nonetheless, Plaintiff completely fails to present any argument that these statements satisfy the third and fourth prerequisites of FRE 807. In fact, it is unlikely that Plaintiff could demonstrate that she could not find through reasonable efforts other evidence of co-workers' self-evaluation. Regardless, it is the burden of the proponent of hearsay evidence to establish that an exception applies. *See United States v. Samaniego*, 187 F. 3d 1222, 1224 (10th Cir. 1999) ("The obligation of establishing the applicability of a hearsay exception…falls upon…the proponent of the evidence.") (citations omitted); *United States v. Irvin*, 682 F.3d 1254, 1262 (10th Cir. 2012) (same). Plaintiff has not met this burden and, as a result, the hearsay statements of her co-workers may not be considered when ruling upon the motion for summary judgment.

While Plaintiff cites only to FRE 807 to avoid the hearsay bar, the Court considered one other avenue for considering these statements – FRE 801(d)(2). Relevant here, a statement is not inadmissible hearsay if the "statement is offered against an opposing party and: … (C) was made by a person whom the party authorized to make a statement on the subject; [or] (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed…." Fed. R. Evid. 801(d)(2). Under these provisions, an employee's statement (such as the comments made by Plaintiff's co-workers) might be admissible against an employer (such as

Defendant). However, this record does not support introducing the co-workers' statements about their evaluations against Defendant.

Simply put, there is no evidence that Defendant authorized the co-workers' statements nor that telling Plaintiff about their own evaluations was within the scope of the co-workers' employment relationship with Defendant. *See, e.g., Talavera v. Shah*, 638 F.3d 303, 310 (D.C. Cir. 2011) (co-worker statement that he was asked different questions in interview not admissible against employer under FRE 801(d)(2)); *Stephens v. Erickson,* 569 F.3d 779, 793-94 (7th Cir. 2009) (administrative assistant's statements about boss's negative statements about plaintiff were not admissible against the employer under FRE 801(d)(2) because assistant's assigned duties did not include involvement in the company's promotional or hiring processes); *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1266 n.5 (10th Cir. 2005) (co-worker's statements about sexual orientation of other employees were not admissible by employee against the employer under FRE 801(d)(2) "because it [did] not concern a matter within the scope of [speaker's] employment"); *Marcic v. Reinauer Trans. Co.*, 397 F.3d 120, 128-29 (2d Cir. 2005) (statement of deck hand about painting on rail of ship was inadmissible against employer under FRE 801(d)(2) because plaintiff presented no evidence that deckhand painted the rail); *Arce v. Chicago Transit Authority*, 193 F. Supp.3d 875, 886 (N.D. Ill. 2016) (co-worker's statement that white employees with less seniority received more overtime was inadmissible against employer under FRE 801(d)(2) because "there [was] nothing in

the record indicating that [employer] authorized the coworker to make statements about the overtime worked by others [and there was] nothing in the record indicating that telling [plaintiff] about overtime worked by others was made within the scope of the coworker's employment relationship with [employer]"). Without such evidence, the statements by Plaintiff's co-workers about their evaluations would not be admissible under FRE 801(d)(2).

Thus, Plaintiff presents no admissible evidence that Defendant disparately evaluated her. Consequently, this argument cannot support reconsideration of the Court's order.

**4. Plaintiff presented no evidence that Defendant singled her out for excessive scrutiny to manufacture a performance case against her.**

Plaintiff asserts that the Court erred by failing to conclude that she presented evidence that Defendant subjected Plaintiff to excessive scrutiny. *Doc. 76* at 10. To begin, Plaintiff directs the Court to a November 2010 email, written by Mr. Dye to members of TKE management, that in relevant part states, "[w]e need to lay the ground work so that we can write her up if she goes on another buying spree. Let's keep on top of her[.]" *Doc. 54-21* at 7. Plaintiff argues that this email shows that Defendant "was going out of its way to find a reason to discipline [her.]" *Doc. 76* at 10. The Court previously considered this argument and again holds that no reasonable juror could conclude that this email suggests that Defendant was "seeking to build a performance-based case against [Plaintiff] *irrespective of whether her actual performance called for it*[.]"

*Doc. 79* at 6 (emphasis added). Rather, this email establishes only that Plaintiff had previously made unauthorized or excessive purchases, and Defendant planned to keep thorough records to accurately address such expenditures if Plaintiff repeated such behavior. Because there was a basis to monitor Plaintiff's spending with particularity, Defendant was not seeking "a reason" to build a case against Plaintiff "irrespective of whether her actual performance called for it." *Id*. In sum, this email does not support Plaintiff's pretext argument, and the Court did not err in so determining previously.

Plaintiff also argues that Defendant singled out Plaintiff and manufactured a case against her based on the fact that her "Union Representative Leonard Bridge suspected all along that 'TKE [was] manufacturing or exaggerating a situation only to issue Article XXII 5e letters to improperly terminate [her] employment.'" *Doc. 76* at 13 (quoting *doc. 54-17*). Plaintiff supports this proposition with an email written by Mr. Bridge on January 29, 2010, before Plaintiff's termination and subsequent settlement-based reinstatement. Assuming that this pre-settlement evidence could be considered, it fails to support Plaintiff's "excessive scrutiny" argument. First, suspicions of Mr. Bridge, or any other person for that matter, do not qualify as evidence. Of course, to the extent that a suspicion is based upon facts, those facts would be admissible. However, Plaintiff points to no facts to support the claimed suspicion of Mr. Bridge, and thus, it is not admissible evidence.

More disturbingly, Plaintiff completely mischaracterizes Mr. Bridge's communication.  His email to TKE management, in relevant part, reads,

> I have received a letter on [Plaintiff and] I also received a rebuttal letter from [Plaintiff.]  I am forwarding it to you and would request that we schedule a meeting to discuss the issues at hand.  I had a lengthy conversation with [Plaintiff] last night and if her story is correct then we will have no other recourse but to file a grievance on [her] behalf.  That being said[,] I also know that there [are] two sides to every story and in this case their [sic] appears to be several participants…
>
> …I am not making accusations but I hope that TKE is not manufacturing or exaggerating a situation only to issue Article XXII 5e letters to improperly terminate [Plaintiff's] employment.  I would never question your integrity, however I know that you are not the only one in the TKE El Paso office.  I do understand that [Plaintiff's] performance has been in question in the past but holding an employee solely responsible for the decisions that TKE management has made is unacceptable.

*Doc. 54-17*.  The email does not, as Plaintiff contends, reveal that Mr. Bridge suspected "all along" that Defendant was manufacturing a performance-based case against Plaintiff.  Mr. Bridge merely notes that Plaintiff had accused Defendant of discriminatory behavior, and that he hoped to speak with TKE management to gain a balanced perspective before making his own conclusions.  In fact, Mr. Bridge emphasizes that he does not seek to blame Defendant by using expressions like "if her story is correct," "I am not making accusations," "there [are] two sides to every story," and "I would never question your integrity."  *Id*.  It is abundantly clear that Mr. Bridge's knowledge at the time of the email is limited to the Plaintiff's statements to him and that he is expressing no opinion about their validity.  This email provides evidence of nothing more than that Plaintiff accused Defendant of discriminatory

behavior and brought the issue to the attention of her union representative, who opened communication with Defendant.

Next, Plaintiff references an email from April 10, 2013, which she argues demonstrates that Defendant scrutinized her and was "'hunting' for reasons to deny her equal pay." *Doc. 76* at 11. Plaintiff claims that the email, in relevant part, states, "Charlie reached out and asked me to hunt for any information I might have in my desk on [Plaintiff.]" *Id*. Similarly, Plaintiff argues that a September 17, 2010 email from J.P. Heany to Mr. Upchurch reveals that Defendant was "determined" to build a performance case against her. *Doc. 76* at 12. Plaintiff asserts that the email states, in relevant part, "to be proactive, please reinforce with [TKE managers] that we must provide the same level of scrutiny to ALL of their employees on whom we have GPS data. We will need that consistency if we take action against [Plaintiff.]" *Id*. Finally, Plaintiff references a January 2011 email exchange between TKE managers, who discuss the need to "keep documenting" when TKE receives customer complaints concerning Plaintiff. *Id*.

Most problematically, **none** of these three emails (April 10, 2013, September 17, 2010, January 2011 exchange) were included in the summary judgment record when briefing was complete. Plaintiff acknowledges that the January 2011 email was not previously included in the record and attaches it to the instant motion as Exhibit 1. *Id*. In an attempt to mitigate this failure, Plaintiff notes that "[t]his document was

referenced – indeed, quoted – in the summary judgment briefing." *Id*. at n.4. However, she does not provide support for the implied proposition that such a reference would justify considering such evidence under Fed. R. Civ. P. 56(c)(1) despite its omission from the record. Worse still, neither the April 10, 2013 or September 17, 2010 email can be found in the record even now. For both, Plaintiff cites to *doc. 54-4*, Ex. 2, but a review of that document reveals only an excerpt of the deposition of Jack Upchurch. *See doc. 54-4*. While Plaintiff's citation indicates that the referenced emails were exhibits to that deposition, the record does not contain any exhibits to the deposition. *See id*. Therefore, none of these three emails provide a basis for the Court to reconsider its ruling.

Based on the forgoing, Plaintiff has failed to present any evidence that might demonstrate that Defendant excessively scrutinized Plaintiff in order to manufacture a performance case against her.

### 5. Plaintiff has not presented any evidence that Defendant exhibited general animus towards her based on sex.

Plaintiff argues that evidence reveals that Defendant possessed animus towards her, which supports her pretext argument. *Doc. 76* at 13. However, the Court concludes that Plaintiff proffers no evidence of animus against her founded on sex, the basis upon which she alleges discrimination.

First,[8] Plaintiff notes that TKE selected her male replacement, Steve Evarts, before terminating her in March 2010, and thereafter hastened her termination. *Doc. 76* at 13. Unfortunately, the only evidence to which she cites in support of this claim is an email which is not in the record. As with several emails addressed above, Plaintiff cites to *doc. 54-4*, Ex. 2, but a review of that document reveals only an excerpt of the deposition of Jack Upchurch. *See doc. 54-4.* While Plaintiff's citation indicates that the referenced email was an exhibit to that deposition, the record does not contain any exhibits to the deposition. *See id.* Consequently, this purported email cannot provide a basis for the Court to reconsider its ruling.

Furthermore, even if the Court could properly consider this email, TKE's decision to hire a replacement before terminating Plaintiff and its subsequent speedy termination of Plaintiff do not support a finding of animus against her based on sex or a finding that Defendant's basis for termination was pretextual. Plaintiff cites to *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114 (10th Cir. 2005) for the proposition that "the fact that TKE selected her replacement even before letting her go provides evidence that her performance was not in fact the reason for her removal." *Doc. 76* at 13. *Bryant*, however, does not support such a broad premise. In *Bryant*, an individual, Nagle, was hired as a claims representative more than nine months before plaintiff's termination

---

[8] Under Plaintiff's organization, she begins this section with her argument based upon the Bridge email. *Doc. 76* at 13. The Court has addressed it above at *supra* pp. 23-24.

and had told others that he "was brought in to take [plaintiff's] place as claims director." *Id*. at 1126. In that position, Nagle selectively directed an audit of the claims division which revealed the very problems primarily used to justify plaintiff's termination. *Id*. It was under these circumstances that Nagle's alleged "pre-selection" undermined the employer's proffered nondiscriminatory reasons for plaintiff's termination. *Id*. at 1125-27. Nothing like the *Bryant* facts are present in the instant case. On the date of the purported email, Plaintiff's performance problems had already been documented.[9] Even accepting the text of the email as represented by Plaintiff, it demonstrates only that Defendant was aware of someone (Evarts) willing and able to quickly take up the rural New Mexican position. Given that such a position is likely difficult to fill, they clearly did not want to delay locking down that solution.

Second, in support of her animus argument, Plaintiff notes that Mr. Dodd "gloated" that it was "good news" that Defendant had terminated Plaintiff. *Doc. 76* at 13. Her support for this fact is an email not included in the record. Again, Plaintiff cites to the excerpt of the deposition of Jack Upchurch. *See id*. (citing *doc. 54-4*, Ex. 2). And, again, Plaintiff's citation indicates that the referenced email was an exhibit to that deposition, but the record does not contain any exhibits to the deposition.[10] *Id*. As

---

[9] For clarity, it should be noted that Plaintiff's argument here relates to her termination in March 2010. Thus, the Court here refers to the performance issues documented before that time.

[10] The Court notes that in her Response to Defendant's Motion for Summary Judgment, Plaintiff referred to this statement and simply cites to "Upchurch Tr Ex 7." *See doc. 55* at 7.

before, this purported email cannot provide a basis for the Court to reconsider its ruling because it is not in the record.  Moreover, even if the Court were to consider this statement out of context, a positive reaction to the termination of an employee, whose performance Defendant contends was subpar, would simply not demonstrate animus against Plaintiff based on sex.

Finally, Plaintiff points to a June 6, 2011 email from Mr. Dodd, which says, "extreme caution needs to be applied to [Plaintiff] but *just state what the facts are and nothing more*[,]" *doc. 76* at 13 (quoting *doc. 54-23* at 4), and asks the Court: "What could that 'more' be, other than editorial content making TKE's animus explicit?"  However, Plaintiff presents this statement out of context.  In fact, the immediately following sentence reads, "[u]ltimately our goal is to help this svc tech become all that they can be but just in case."  *Doc. 54-23* at 4.  Undeniably, this email reflects a concern that, if Defendant ever decided that unfavorable employment action was necessary toward Plaintiff, litigation was very possible.  Consequently, Mr. Dodd simply gave good advice that supervisors be cautious in all matters.  This approach, while certainly self-protective, simply does not establish animus toward Plaintiff, let alone animus based on sex.

In sum, Plaintiff has presented no evidence of sex-based animus which could establish that Defendant's nondiscriminatory reason for termination was pretextual.

Thus, this argument does not support reconsidering the Court's grant of summary judgment.

**6. Plaintiff's evidence of being denied training on two occasions in early 2010 creates no genuine dispute about Defendant's reasons for denying her a plus rate from August 2010 until February 2016.**

Plaintiff also contends that evidence that Defendant denied her training it provided to male employees supports her pretext argument. *Doc. 76* at 10; *doc. 79* at 7. Both times Plaintiff was allegedly denied training occurred in early 2010 prior to her first termination and her reinstatement pursuant to a settlement agreement. Specifically, Dolin testified in her affidavit that Defendant denied her permission to attend a training on Traflomatic III ("T3") elevators in January 2010, even though several T3 elevators were on her route, while allowing a male LR, who did not have a T3 elevator on his route, to attend. *Doc. 55-5* at 2-3. She asserts that this denial of a training opportunity, apart from being disparate, harmed her performance record. *Id.* at 3. Plaintiff notes that she was disciplined in January 2010 when she was unable to fix a T3 elevator, which, according to Plaintiff, shows that Defendant aimed to make her fail by denying her training. *Id.* Similarly, she notes in her affidavit that Defendant thereafter denied her February 2010 request to attend a Factory Training at Motion Control Engineering ("MCE"), even though she had two units with MCE equipment on her service route. *Id.* at 5. Plaintiff explains that she requested vacation time from

February 21-28 to attend the training independently, and Defendant used her missed service visits during this vacation time to justify her termination. *Id.* at 8.

To recall, Plaintiff's claims in the instant case are based on Defendant's failure to pay her a plus rate from August 2010 until February 2016. As the Court explained in its Order Granting in Part Defendant's Motion for Summary Judgment, *see generally doc. 72*, Plaintiff failed to present evidence that Defendant's proffered nondiscriminatory reason was pretextual. In short, the Court found that Defendant established that Plaintiff suffered from an extensive pattern of performance problems which were documented from January 2010 until her voluntary transfer to a California position that did not qualify for a plus rate. *Id.* The Court has herein addressed each new or reasserted "fact" that Plaintiff contends undermines that conclusion. In each circumstance addressed above, Plaintiff fails to point to admissible evidence and/or the evidence does not support the respective contention.

Given this lack of support, Plaintiff's evidence about the two denials of training in early 2010 are insufficient to create a genuine dispute on the pretext issue. As the Supreme Court has explained, "an employer [is] entitled to judgment as a matter of law if the … plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) (citations omitted). At best, the two denials for training create only a weak

issue of fact in the face of abundant evidence supporting Defendant's

nondiscriminatory explanation for the denial of plus-rate pay to Plaintiff.

First, the alleged denials of training are temporally distant from much of the

relevant period.  Second, they occurred prior to Plaintiff's original termination and

subsequent reinstatement pursuant to a settlement agreement that indicated that she

would not receive a plus rate upon reinstatement.  Third, Plaintiff provides no evidence

that she was again denied any training she requested after she was reinstated.  If

Plaintiff believed her performance problems were due to a lack of training, such

requests would be expected.  Fourth, Plaintiff does not claim that any of the

performance problems after reinstatement were the result of a lack of training.  Fifth,

Plaintiff's documented performance problems went far beyond issues which would be

explained by a lack of training.  Most related to poor customer relations skills, working

unauthorized overtime, and other failures to obtain prior approval when required.  In

fact, even with respect to the problems in early 2010 which Plaintiff associates with the

training denials, the unsatisfactory letters from Defendant were not limited to Plaintiff's

ability to do the work.  Instead, they included complaints regarding Plaintiff's failure to

notify her supervisor about a complication, *doc. 54-15*, and failure to advise her

supervisor that her monthly maintenance visit needed to be covered while she was on

vacation, *doc. 54-13*.  Under the totality of these circumstances, even assuming that the

denial of training in early 2010 resulted from Plaintiff's disparate treatment, Plaintiff

presents insufficient evidence from which a reasonable jury could find Defendant's nondiscriminatory reason for denying Plaintiff the plus rate pretextual. Therefore, summary judgment for Defendant, as granted in the original Order, was proper.

The Court has addressed all arguments that Plaintiff presented in her effort to seek relief under Federal Rules of Civil Procedure 59 and 60. Based on the foregoing, the Court finds that Plaintiff has failed to provide any justification to grant her motion. Consequently, the Court hereby DENIES Plaintiff's Motion for Reconsideration (*doc. 76*).

### B. THE COURT DENIES DEFENDANT'S REQUEST FOR AN AMENDED RULING.

In its Response to Plaintiff's Motion for Reconsideration, Defendant requests that the Court amend its summary judgment ruling. *Doc. 78* at 12-14. Particularly, Defendant asks the Court to reverse its decision declining to exercise supplemental jurisdiction over Plaintiff's remaining state law claim under the FPWA, *see doc. 72* at 47-53, and instead enter summary judgment in Defendant's favor on the FPWA claim. *Doc. 78* at 12-14. The Court will deny Defendant's request.

In its ruling on Defendant's Motion for Summary Judgment, the Court dismissed all of Plaintiff's federal claims with prejudice where the basis for the Court's jurisdiction over the action was federal question. *Doc. 72*; *see also doc. 2-1*. The Tenth Circuit has held that it is proper for a district court to decline to exercise supplemental jurisdiction over a state law claim when it has dismissed all claims over which it had original

jurisdiction, *Nielander v. Bd. of Cty. Comm'rs of Cty. of Republic, Kan.* 582 F.3d 1155, 1172 (10th Cir. 2009), and has even stated that a district court "usually should" do so, *Smith v. City of Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).  The Court, respecting this instruction, declined in its discretion to exercise supplemental jurisdiction.  *Doc. 72* at 47-53.  Defendant has not provided a reason why the Court should second-guess this decision.  As a result, the Court DENIES Defendant's reconsideration request.

### IV.   CONCLUSION

Based on the foregoing, the Court DENIES Plaintiff's Motion for Reconsideration (*doc. 76*) and DENIES Defendant's request for an amended judgment (*doc. 78*).

**IT IS SO ORDERED**.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**